## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK YOUNG REPUBLICAN CLUB, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>ENFANTS RICHES DÉPRIMÉS, LLC and ALEXANDER HENRY LEVY a/k/a HENRY LEVY a/k/a HENRY ALEXANDER a/k/a HENRY ALEXANDER LEVY,<br><br>                    Defendants. | Case No.:<br><br>__COMPLAINT__<br><br>__JURY TRIAL DEMANDED__ |

Plaintiff, NEW YORK YOUNG REPUBLICAN CLUB, INC. ("NYYRC," "the Club," or "Plaintiff"), by and through undersigned counsel, brings this action against Defendants, ENFANTS RICHES DÉPRIMÉS, LLC ("ERD") and ALEXANDER HENRY LEVY a/k/a HENRY LEVY a/k/a HENRY ALEXANDER a/k/a HENRY ALEXANDER LEVY ("Levy," together with ERD, "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for willful trademark infringement arising under the relevant provisions of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a)[1], and seeking all applicable relief available under those provisions and under 15 U.S.C. §§ 1116 and 1117, due to Defendants' manufacturing, selling, offering for sale, distributing, advertising, marketing, promoting, exporting and/or importing of goods—specifically, apparel—featuring mirror images of Plaintiff's iconic Word Mark and Logo (defined *infra*).

---

[1] 15 U.S.C. § 1125(a) is commonly referred to as Section 43(a) of the Lanham Act.

2.    The NYYRC is the nation's oldest and largest Young Republican Club, the home for many of America's best and brightest minds dedicated to nurturing patriotic ideals since 1911. In recent years, under the transformative leadership of President Gavin M. Wax, the Club's prominence in the public square and role in shaping the cultural *zeitgeist* have grown exponentially; this growth has occurred against a backdrop of millions of Americans and New Yorkers realizing what the Club's visionary leadership knew all along—that President Donald J. Trump's "Make America Great Again" movement is the most remarkable and transformative political movement in American history.

3.    The ascendant Club has featured prominently in mainstream publications and has organized galas and other major events attended by leaders in business, entertainment, and politics, including most notably President Trump, who delivered a memorable keynote address at the Club's 111th Annual Gala on December 9, 2023. Other prominent attendees have included celebrated former White House chief strategist Stephen K. Bannon, Senator Roger Marshall, Representative Marjorie Taylor Greene, and former Representative Matt Gaetz. *See, e.g*., Sarah Fortinsky, *Trump, Bannon embrace at New York Republican Club gala*, THE HILL (Dec. 10, 2023), https://thehill.com/homenews/campaign/4352701-trump-bannon-embrace-at-new-york-young-republican-club-gala/ (last visited Dec. 20, 2024); Jennifer Harper, *New York Young Republican Club plans significant party*, THE NEW YORK TIMES (Dec. 7, 2023), https://www.washingtontimes.com/news/2023/dec/7/inside-beltway-new-york-young-republicans-club-pla/ (last visited Dec. 20, 2024); David Maddox, *Farage makes sixth US trip as MP to be headliner at MAGA gala which has snubbed "loser" tories,* THE INDEPENDENT (Dec. 9, 2024), https://www.the-independent.com/news/uk/politics/farage-republican-fundraiser-tories-new-york-b2661276.html (last visited Dec. 20, 2024).

4.      The NYYRC's timeless brand of seamlessly blended classical excellence and cutting-edge throwback fidelity to America-first principles is a genuinely avant-garde expression of American exceptionalism. The NYYRC brand is exemplified by the trademarked words "New York Young Republican Club" and by the trademarked iconic soaring eagle logo, both duly registered with the United States Patent and Trademark Office. (The "NYYRC Marks") (*See* **Exhibits A** and **B**).

5.      The NYYRC's brand conveys an appealing and enduring vision of the American Dream—liberty, patriotism, and prosperity.

6.      In horrifying contrast, ERD—Enfants Riches Déprimés translates to "Depressed Rich Kids" in French—is a prominent "streetwear" company representing destructive values that are antithetical to everything the NYYRC stands for.

7.      The dystopian values that Defendants' ERD brand represents—callous nihilism, glorification of wanton drug abuse, inappropriate sexual behavior, toxic victimhood, urban decay and desolation, post-modern Euro-selfishness, and wanton decadence reminiscent of Emperor Caligula—are all inextricably linked with Defendants' uniquely predatory business model. But Defendants are not merely predatory in the abstract. No, much like disease-addled hyenas, Defendants are predatory in the most craven sense of the word. Time and time again under cover of darkness, Defendants steal the intellectual property of healthy brands, then when detected, shamelessly pivot to new victims to avoid accountability and consequences.

8.      Streetwear—the centerpiece of Defendants' theft-based business model—is a modern counterculture casual fashion movement featuring a vacuously irreverent edge and emerging out of a bizarre amalgamation of punk, skateboarding, 1980s nostalgia, and Japanese urbanwear. Streetwear brands, including ERD, vie for a relatively young consumer base that

closely follows particular brands and thirsts for limited edition releases—the exact sort of limited releases that ERD thrives on by ripping off established brands and milking those brands for periods of time calculated to maximize profit while evading detection.

9.     Though not monolithic, the streetwear movement tends to lean strongly to the left politically and often thumbs its nose at established or traditional brands, ideas, or notions. Streetwear brands often fancy themselves as being artistic in nature, a fact which explains the focus of ERD and competitor brands on limited releases of apparel which can and do sell for exorbitant prices relative to their low cost of production and lack of artistic merit. *See* Damian Fowler, *The Hype Machine And The Business Of Scarcity,* BBC (Feb. 5, 2018), https://www.bbc.com/worklife/article/20180205-the-hype-machine-streetwear-and-the-business-of-scarcity  (last visited Dec. 20, 2024).

10.     Defendants, by leveraging the theft of intellectual property together with a heavy dose of faux-Franco fashion sensibility, have turned ERD into an unusually popular streetwear brand worn by many celebrities including Jared Leto, Sophie Turner, and Kanye West. *See* Cassey Ayala, *The Search for Ecstasy,* Flaunt (Undated), https://www.flaunt.com/post/enfants-riches-deprimes-ss-2024 (last visited Dec. 20, 2024); *Sophie Turner wearing the ENFANTS RICHES DÉPRIMÉS X THIERRY LASRY "ISOLAR"*, Thierry Lasry https://www.thierrylasry.com/us/news/post/sophie-turner-wearing-the-enfants-riches-deprimes-x-thierry-lasry-isolar?srsltid=AfmBOoo3SFTjFYik9wXldy9Ln_9WYXHQEu-kOZMpXEQh3seeCVve5fp (last visited Dec. 20, 2024); Edward Barsamian, *Kanye West and Common Shut Down Off-Duty Dressing in Statement*, Vogue (March 21, 2017), https://www.vogue.com/article/kanye-west-yeezy-enfants-riches-deprimes-common-bally-statement-trouser-celebrity-style (last visited Dec. 20, 2024).

11.    The NYYRC and ERD are the ultimate study in contrasts. Ironically, it is this contrast, and the Club's sterling reputation, that made the NYYRC brand a particularly appealing target for Defendants' "trademark" business maneuver—*trademark infringement.* In fact, ERD is perhaps better understood as a trademark infringement mill than as a standalone brand producing anything of value. Through no fault of its own, the NYYRC has now joined the ranks of ERD's long list of infringement victims.

12.    Accordingly, the NYYRC brings this action for willful trademark infringement against Defendants. Absent judicial intervention, Defendants' chronic and destructive brand piracy will continue, and the Club will suffer irreparable harm to its time-honored brand and reputation.

13.    The NYYRC also brings this action to deter Defendants—who have been the subject of previous infringement actions and are utterly unrepentant for their unconscionable business practices—from repeating this identical misconduct in the future. Clearly, even after multiple embarrassing lawsuits, Defendants *still* seem unwilling to "read the room" and instead continue to embark on increasingly brazen schemes to steal intellectual property that obviously does not belong to them, which means that nothing short of the most severe measures available will achieve the necessary corrective action.

## PARTIES

14.    Plaintiff, the NYYRC, is a not-for-profit corporation founded in 1911 and duly formed under the laws of New York with its principal place of business located at 53 W. 28th Street, New York, NY 10001.

15.    Defendant, ERD, is a Delaware corporation founded in 2012 with its principal place of business located at 2432 E. 8th Street, Los Angeles, CA 90021.

16.     Defendant, Levy, is an individual who upon information and belief, resides in California and/or Georgia, and is the founder, chief executive officer, controlling member, and creative director of ERD. Levy designs the fashion apparel and merchandise for ERD, including the infringing goods that are the subject of this Complaint. Levy also authorized the infringement at issue in this Complaint.

## JURISDICTION AND VENUE

17.     This is an action for trademark infringement under the relevant provisions of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and seeking all applicable relief available under 15 U.S.C. §§ 1116 and 1117. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

18.     Defendants are subject to personal jurisdiction in the Southern District of New York because this matter arises from infringing conduct that took place in this District. Specifically, Defendants have and continue to willfully infringe on the NYYRC Marks in New York generally, and in this District specifically, and to profit from the sale of infringing goods in New York generally and in the Southern District of New York specifically. Defendants also advertised and sold their infringing goods to consumers in the State of New York generally, and in the Southern District of New York specifically. Additionally, Defendants intentionally targeted the NYYRC, an organization that, in name, activity, address, and mission, is based in the Southern District of New York.

19.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) for the same reasons that Defendants are subject to personal jurisdiction in this District. A substantial part of the events or omissions giving rise to the claims of this action took

place in the Southern District of New York and for at least that reason, venue in this District is proper.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### A. The NYYRC Marks

20.     Under its current leadership, the NYYRC has experienced tremendous growth over the past decade. Its increased popularity is largely attributable to not only its foresight about America-first conservatism, but also the NYYRC's reputation as a beacon of conservative values for young people in the deep blue sea that is New York City and State politics.

21.     The Club has duly secured the trademark registration for its name, NEW YORK YOUNG REPUBLICAN CLUB, (the "Word Mark"). (*See* **Exhibit A**).

22.     The Word Mark is registered for use in International Classes 035 and 041, including for use in connection with the following goods and services: "Association services, namely, promoting awareness of patriotism, charitable giving, constitutional issues, law to the public, association members; Organizing chapters of a political, economics, business club and promoting the interests of the members thereof; Providing a website featuring information about political issues; Providing information, news, and commentary in the field of politics" (Class 035); and  "Arranging and conducting of lectures in the field of politics, economics, law, business, current events; Social club services, namely arranging, organizing, and hosting social events, get-togethers, and parties for club members; Entertainment and educational services, namely, the presentation of seminars, lectures, workshops and panel discussions, and ongoing television and radio talk shows all in the field of public interest concerning politics, economics, law, business; Providing on-line newsletters in the field of politics, business, current events, social events" (Class 041).

23.     The Club has also used the Word Mark in commerce, including with respect to sale of apparel.

24.     In addition, NYYRC President Gavin M. Wax carefully crafted a logo for the Club that embodies its message, mission, and values (the "NYYRC Logo" or the "Logo," together with the Word Mark, the "NYYRC Marks").

25.     The Club has also duly secured trademark registration for the Logo (*See* **Exhibit B**).

26.     The Logo is also registered for use in International Classes 035 and 041.

27.     The Club has also used the Logo in commerce, including with respect to sale of apparel.

28.     Pictured below, the NYYRC Logo is reminiscent of an old-fashioned stamp in form. It features a soaring bald eagle surrounded by sunbeams, includes the year that the NYYRC was founded, and prominently displays the Word Mark in a serif font.



29.     The NYYRC maintains a significant online presence and uses that presence to recruit new members and secure donations, thereby increasing its social influence and operating budget.

30.     Additionally, the NYYRC uses its Word Mark and Logo on apparel to promote its goods and services. Examples of the Club's apparel are included here:





## B. Defendants' Pattern of Trademark Infringement

31.    Defendants are no strangers to legal issues and litigation. In its short history, ERD has already been the subject of embarrassing legal battles with both the Viper Room and photographer Mick Rock, as well as others.[2] The Viper Room is a landmark bar in Los Angeles frequented by celebrities and sells its apparel to both direct customers and also to admirers who have never set foot inside the physical establishment, much like the Hard Rock Café or RonJon Surf Shop.

### i. The Viper Room

32.    The Viper Room has used two of its iconic logos since its opening in 1993 and both logos were awarded incontestable status by the USPTO in 2014.[3] ERD then used Viper Room's logos to make widely sold hats that infringed the trademarks (examples of which are

---

[2] *See e.g., Lydia Anne Koch and Julia Gorton,* Case No. 2:2021-cv-08696 (C.D. Cal 2021) (settled without answer or discovery; *Vincent Gallo v. ERD,* Case No. 2:2022-cv-03506 (C.D. Cal. 2022); *Richard Kern and Lydia Anne Koch (p/k/a Lydia Lunch) v. ERD*, Case No. 2:2023-cv-07910 (C.D. Cal 2023) (settled Feb 2024 after answer and some discovery); *Blinko v. ERD*, Case No. 2023-cv-05530 (S.D.N.Y. 2023) (settled March 2024 after answer and mediation).
[3] *See* U.S. Trademark Registration Nos. 3515208 and 3483878.

included below). Utilizing a lazy inversion of the Viper Room's logo with no other

modifications, ERD sold the infringing hats for over $1,350 apiece, while Viper Room sold them

for only $50 apiece—a markup of 2,600%. This exorbitant markup is consistent with ERD's

pattern of not only infringing on trademarks, but turning a hefty profit with this piracy.



33.    In December 2022, the Viper Room sued ERD and Levy. Court documents

indicate[4] that Defendants likely reached a quick out of court settlement for their brazen

infringement of the Viper Room's trademarks.

---

[4] *Viper Room v. ERD*, Case No. 2:2022-cv-09078 (C.D. Cal.).

### ii. Mick Rock

34.     Another example in Defendants' longstanding pattern of trademark infringement is their recent self-inflicted dispute with Rock.[5] In keeping with ERD's standard business model, Defendants illicitly used copyrighted works, including photographs captured by Rock, on ERD goods. Rock was a talented photographer whose hard work captured simultaneously the glitz and grit of classic rock stars and other late 20th century musicians. Defendants misappropriated Rock's copyrighted photograph of Lou Reed,[6] and shamelessly printed it on unlicensed apparel including sweaters. Defendants then sold these same sweaters for a staggering price of over $2,700. As with Viper Room, Defendants evaded a trial and resolved this dispute with a settlement.

### C. Defendants' Infringement of the NYYRC Marks

35.     The Club has never permitted Defendants to use the NYYRC Marks at any point in time. Additionally, Defendants have never approached the NYYRC for permission to use the Marks. Tellingly, Defendants have also refused to comment publicly on the matter. *See* Jon Levine, *Luxury French clothing brand rips off logo of the NY Young Republicans, puts it on sweatshirt selling for $1.4K*, NEW YORK POST (Nov. 23, 2024), https://nypost.com/2024/11/23/us-news/luxury-french-clothing-brand-rips-off-logo-of-the-ny-young-republicans-puts-it-on-sweatshirt-selling-for-1-4k/ (last visited Dec. 20, 2024) (ERD declined to comment).

36.     In 2019, the Club began selling apparel that featured its signature soaring eagle logo (examples shown *supra*). The Club's promotion through apparel proved successful, upon

---

[5] *Rock v. ERD*, Case No. 2:2020-cv-02172 (C.D. Cal. 2020); *see also Rock v. ERD,* Case No. 1:2017-cv-02618 (S.D.N.Y. 2017).
[6] US Copyright Office Registration No. VA 1-766-990.

information in belief resulting in substantially increased attention, consumer brand recognition, and visibility for the NYYRC.

37.     On or about November 10, 2024, it came to the attention of the Club that Defendants were selling apparel—including but not limited to hats and sweatshirts—emblazoned with either the Club's Word Mark only (Defendants' hats, for example), or emblazoned with the Club's Word Mark *and* Logo (Defendants' sweatshirts, for example). (Examples of Defendants' infringing goods shown *infra*, ¶¶ 39, 41, 42).

38.     As of November 15, 2024, Defendants' infringing goods were apparently sold out with prices no longer displayed on their website. However, by way of instructive reference point, comparable ERD sweatshirts sell for up to $2,200 on Defendants' website, as demonstrated by the following examples:





39.     Examples of Defendants' infringing goods include the following "NYRC 6-PANEL HAT" and "NEW YORK Y.R.C. RAGLAN SWEATSHIRT":





40.    These and other infringing ERD goods were and are among the top selling goods on ERD's website, garnering significant attention from consumers.

41.    Though the infringing ERD hats are "sold out" on Defendants' website, they are listed for sale at a price of over $3,000 on several re-sale websites, including ERD affiliate GRAILED:



15

42.     In fact, numerous ERD-affiliated companies (*e.g.*, ESSX, SVRN, Riccardi

Boston, Antonioli, Mosaique d' Art) and re-sale websites and stores (*e.g.*, GRAILED, 4G) list

Defendants' infringing NYYRC sweatshirts for many times this price, with some listings as high

as $15,000.



43.     ERD has also used their infringing sweatshirts to cross-market handbags and

parkas on its website. Indeed, Defendants' theft-based business model is all the more insidious

because Defendants profited and continued to profit from the NYYRC Marks not just by the sale

of infringing goods, but also by leveraging the Club's sterling reputation and valuable Marks to

sell ERD's *other* goods, as demonstrated by the following examples:



44.     Exacerbating the severe harm to the NYYRC, Defendants have frequently used sexually explicit advertising to promote their goods, causing consumers to improperly associate the Club with Defendants' scandalous ethos. As seen in the following examples of risqué and sexualized advertising that Defendants prominently feature on their social media pages and website, ERD's image is antithetical to the NYYRC's message, mission, and values:



45.     As evidenced by the Viper Room, Rock, and other thefts, Defendants clearly have no moral qualms about improperly capitalizing on the reputation and goodwill of upstanding organizations through well-planned "hit and run" cash grabs. Defendants' theft of the NYYRC Marks is the latest escalation in a pattern of ugly behavior by a Company which projects its "rebellious" image by pilfering from innocent parties.

46.     However, what Defendants did not count on was that the NYYRC will not be a sitting duck helplessly awaiting further unlawful piracy. Much like the legendary Governor of the

Bahama Islands Woodes Rogers combatting piracy in the 1700s, the NYYRC will not allow

Defendants to continue their shameful modern-day piracy of the Club's intellectual property and

goodwill.

47.    Defendants are infringing on the Club's Marks by using the same name in

connection with its streetwear apparel goods. As shown in the side-by-side comparisons below,

there is no question that Defendants intended to mimic the NYYRC Marks:





48.    Comparison of the NYYRC's "Unisex Sweatshirt" and Defendants' "New York

Y.R.C. Raglan sweatshirt" also confirms Defendants' infringing intent:



49.     Defendants' infringement of the NYYRC Marks is even more problematic than Defendants' prior acts of piracy. Both the Viper Room and Rock have reputations and legacies which are closely aligned with the loose Hollywood and music scenes. In contrast, the NYYRC's mission is:

> To promote and maintain the principles of the Republican Party; to foster within the Republican Party and make practical in service of the municipality, state and nation, the idealism characteristic of youth; to correct in our own party that tendency of all parties to make organization an end rather than a means; to develop sound principle and public spirit in party politics; to promote honest and

fair electoral methods, to the end that the expression of the popular will by
whatever party or body, shall be as free, untrammeled and equal as possible; to
resist and expose political corruption; to advocate merit rather than partisan
service as entitling to public office; to watch legislation and to encourage public
attention to and efficiently criticize the conduct of government.

50.    Yet, Defendants' infringing conduct suggests to consumers that the NYYRC is

affiliated with a counter-culture streetwear brand espousing poor values, which is particularly

harmful to the NYYRC. Because the NYYRC has spent over a century cultivating a reputation

for upholding traditional conservative values, being associated with Defendants' infringing use

of the NYYRC Marks has exacerbated the impact on the Club.

51.    As an organization sustained by membership dues and donors, were the NYYRC

Marks to become falsely associated with Defendants' nihilistic and sexualized ethos, potential

new members, existing members, and donors would not wish to be a part of the Club, to donate,

or to pay membership fees. An organization with a yearly budget close to $1,000,000 (the Club

has spent nearly $700,000 on its 2024 annual gala alone) stands to lose tremendously if its

storied reputation for traditional American values is maimed by Defendants.

52.    Such gross misappropriation and violation of NYYRC's image is a true instance

of corporate defamation and showcases that if left to their piracy, Defendants will continue to

pick on unsuspecting, innocent entities as NYYRC.

53.    Relying heavily on the sneering humor of Generation Z, Levy likely found it

humorous to rip off the name and logo of an organization like NYYRC which does its utmost to

promote traditional American values and customs and use it on their infringing wares. Andrew

Lloyd, *Inside "Gen Z Humor," The Layered And Absurdist Internet Jokes Millenials Are*

*Struggling To Keep Up With*, BUSINESS INSIDER, (Aug. 19, 2023)

https://www.businessinsider.com/millennials-struggling-absurdist-gen-z-humor-memes-2023-8

(last visited Dec.12, 2024).

54.     Having engaged in derisive, infringing use of the well-established Viper Room and Rock brands, Defendants decided to up the ante and target a conservative political organization in a twisted attempt at humor to show what it would be like to use the Club's logo while standing for the complete opposite cultural views and hoping that this misplaced humor would sell apparel and drive attention during the contentious and historic 2024 Presidential Election. By infringing the NYYRC Marks, Defendants attempted to improperly ride the Club's coattails and positive association with President Trump.

55.     And, by consistently using sexual and atavistic advertising on their website and social media pages, Defendants only amplified the harm to the NYYRC.

56.     Defendants' malicious appropriation of NYYRC's Word Mark and Logo to profit from the reputation that the organization worked so hard to create is unjust and requires court intervention.

57.     Parody and satire rightly have their place in American culture, but plain theft cannot be conflated with such or countenanced.

58.     Defendants' brazen misappropriation of the Club's good name is obvious to any and all reasonable consumers and commentators. As the *New York Post* recently observed, Defendants' infringing goods feature "the GOP club's signature bald eagle" and "leaving nothing to the imagination, the words 'New York Young Republican Club' are emblazoned across the front of the sweatshirt in stately gothic font." Levine, *Luxury French clothing brand rips off logo of the NY Young Republicans, puts it on sweatshirt selling for $1.4K*, *supra*.

22

## CLAIMS FOR RELIEF

### COUNT I: TRADEMARK INFRINGEMENT
### OF THE NYYRC WORD MARK
### UNDER THE LANHAM ACT, 15 U.S.C. §§ 1114(1) and 1125(a)

#### (Both Defendants)

59.     Plaintiff, the NYYRC, incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

60.     The NYYRC is the duly registered owner of the Word Mark.

61.     The NYYRC has been using the Word Mark in commerce since at least 2019.

62.     Defendants have infringed on the NYYRC's exclusive and valid trademark through the sale of their infringing goods identified *supra*.

63.     Defendants are infringing the Word Mark by using it in connection with similar goods, including apparel sold online.

64.     Defendants use the NYYRC Marks online, including in their own internet advertising, to drive traffic and sales of their own goods.

65.     Defendants brazenly stole the Club's name and made no attempt to distinguish their imitations from the Club's authentic apparel.

66.     As a result of Defendants' infringing mimicry of the NYYRC Word Mark, consumers are likely to falsely comprehend that the NYYRC is affiliated with or otherwise endorses Defendants' brand, including their prurient advertising.

67.     As a result of Defendants' infringing mimicry of the NYYRC apparel, consumers have been and are likely to be confused about the source of goods bearing the Word Mark.

68.     As a result of Defendants' infringing mimicry of the NYYRC Word Mark, consumers are likely to falsely comprehend that the NYYRC is affiliated with or otherwise endorses Defendants' brand, including their prurient advertising.

69.     As a result of Defendants' infringing mimicry of the NYYRC apparel, consumers have been and are likely to be confused about the source of goods bearing the Word Mark.

70.     Injecting unlicensed copycat goods into an industry in which the trademark-owning party is a competitor (*i.e.*, apparel and online advertising) exacerbates any potential consumer confusion. The industry is not a "crowded" one where there are dozens of competitors using the name of the NYYRC or markedly similar language, and so Defendants' infringement is particularly egregious.

71.     In summary, Defendants' unauthorized manufacturing, selling, offering for sale, distributing, advertising, marketing, promoting, exporting and/or importing of goods bearing the NYYRC Word Mark is likely to cause confusion, mistake, and deception among purchasers, potential purchasers, potential purchasers, the trade, and the public; and/or to deceive them into believing that Defendants' goods bearing the NYYRC Word Mark originate from, are associated with, and/or are approved or sponsored by the NYYRC and/or its licensees when in fact no such association, approval, license, or sponsorship exists.

72.     15 U.S.C. § 1114 provides, in pertinent part:

**(1)** Any person who shall, without the consent of the registrant—

**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies
hereinafter provided.

73.    Additionally, 15 U.S.C. § 1125(a) provides, in pertinent part:

**(1)** Any person who, on or in connection with any goods or services, or
any container for goods, uses in commerce any word, term, name,
symbol, or device, or any combination thereof, or any false
designation of origin, false or misleading description of fact, or false
or misleading representation of fact, which—

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as
to the affiliation, connection, or association of such person with
another person, or as to the origin, sponsorship, or approval of
his or her goods, services, or commercial activities by another
person, or

**(B)** in commercial advertising or promotion, misrepresents the
nature, characteristics, qualities, or geographic origin of his or
her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that
he or she is or is likely to be damaged by such act.

74.    Defendants' foregoing manufacturing, selling, offering for sale, distributing,

advertising, marketing, promoting, exporting and/or importing of goods—specifically, apparel—

featuring mirror images of Plaintiff's iconic Word Mark, constitutes trademark infringement

under 15 U.S.C. §§ 1114 and 1125(a).

75.    15 U.S.C. § 1116 provides that Courts with jurisdiction to adjudicate claims

arising under 15 U.S.C. §1125

Shall have power to grant injunctions, according to the principles of
equity and upon such terms as the court may deem reasonable, to
prevent the violation of any right of the registrant of a mark registered
in the Patent and Trademark Office or to prevent a violation under
subsection (a), (c), or (d) of section 1125 of this title. Any such
injunction may include a provision directing the defendant to file with
the court and serve on the plaintiff within thirty days after the service
on the defendant of such injunction, or such extended period as the

court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

76.    Based on Defendants' foregoing trademark infringement relating to the NYYRC Word Mark, Plaintiff, the NYYRC, is entitled to injunctive relief under 15 U.S.C. § 1116.

77.    15 U.S.C. § 1117 provides for Plaintiff's recovery of damages and costs, including Defendants' profits, any damages sustained by Plaintiff, the costs of the action, and in exceptional cases such as this one, reasonable attorneys' fees (15 U.S.C. §1117(a)); treble damages (15 U.S.C. § 1117(b)); and statutory damages (15 U.S.C. §1117(c)).

78.    Based on Defendants' foregoing trademark infringement relating to the NYYRC Word Mark, Plaintiff, the NYYRC, is entitled to all of these categories of damages and costs set forth herein and available under 15 U.S.C. § 1117.

### COUNT II: TRADEMARK INFRINGEMENT OF THE NYYRC LOGO UNDER THE LANHAM ACT, 15 U.S.C. §§ 1114(1) and 1125(a)

#### (Both Defendants)

79.    Plaintiff, the NYYRC, incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

80.    The NYYRC is the duly registered owner of the Logo.

81.    The NYYRC has been using the Logo in commerce since at least 2019.

82.    Defendants have infringed on the NYYRC's exclusive and valid trademark through the sale of their infringing goods identified *supra*.

83.    Defendants are infringing the Logo by using it in connection with similar goods, including for example apparel sold online.

84.    Defendants use the NYYRC Logo online, including in their own internet advertising, to drive traffic and sales of their own goods.

85.    Defendants brazenly stole the NYYRC Logo and made no attempt to distinguish their imitations from the Club's authentic apparel.

86.    As a result of Defendants' infringing mimicry of the NYYRC Logo, consumers are likely to falsely comprehend that the NYYRC is affiliated with or otherwise endorses Defendants' brand, including their prurient advertising.

87.    As a result of Defendants' infringing mimicry of the NYYRC apparel, consumers have been and are likely to be confused about the source of goods bearing the Logo.

88.    As a result of Defendants' infringing mimicry of the NYYRC Logo, consumers are likely to falsely comprehend that the NYYRC is affiliated with or otherwise endorses Defendants' brand, including their prurient advertising.

89.    As a result of Defendants' infringing mimicry of the NYYRC apparel, consumers have been and are likely to be confused about the source of goods bearing the Logo.

90.    Injecting unlicensed copycat goods into an industry in which the trademark-owning party is a competitor (*i.e.*, apparel and online advertising) exacerbates any potential consumer confusion. The industry is not a "crowded" one where there are dozens of competitors using the Logo of the NYYRC, and so Defendants' infringement is particularly egregious.

91.    In summary, Defendants' unauthorized manufacturing, selling, offering for sale, distributing, advertising, marketing, promoting, exporting and/or importing of goods bearing the NYYRC Logo is likely to cause confusion, mistake, and deception among purchasers, potential purchasers, the trade, and the public; and/or to deceive them into believing that Defendants' goods bearing the NYYRC Logo originate from, are associated with, and/or are approved or sponsored by the NYYRC and/or its licensees when in fact no such association, approval, license, or sponsorship exists.

92.     15 U.S.C. § 1114 provides, in pertinent part:

**(1)** Any person who shall, without the consent of the registrant—

**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

93.     Additionally, 15 U.S.C. § 1125(a) provides, in pertinent part:

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

28

94.    Defendants' foregoing manufacturing, selling, offering for sale, distributing, advertising, marketing, promoting, exporting and/or importing of goods—specifically, apparel— featuring mirror images of Plaintiff's iconic Logo, constitutes trademark infringement under 15 U.S.C. §§ 1114 and 1125(a).

95.    15 U.S.C. § 1116 provides that Courts with jurisdiction to adjudicate claims arising under 15 U.S.C. §1125

> have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

96.    Based on Defendants' foregoing trademark infringement relating to the NYYRC Logo, Plaintiff, the NYYRC, is entitled to injunctive relief under 15 U.S.C. § 1116.

97.    15 U.S.C. § 1117 provides for Plaintiff's recovery of damages and costs, including Defendants' profits, any damages sustained by Plaintiff, the costs of the action, and in exceptional cases such as this one, reasonable attorneys' fees (15 U.S.C. §1117(a)); treble damages (15 U.S.C. § 1117(b)); and statutory damages (15 U.S.C. §1117(c)).

98.    Based on Defendants' foregoing trademark infringement relating to the NYYRC Logo, Plaintiff, the NYYRC, is entitled to all of these categories of damages and costs set forth herein and available under 15 U.S.C. § 1117.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial as to all issues so triable.

**WHEREFORE,** Plaintiff, the NEW YORK YOUNG REPUBLICAN CLUB, INC., prays for judgment against Defendants, ENFANTS RICHES DÉPRIMÉS, LLC and ALEXANDER HENRY LEVY a/k/a HENRY LEVY a/k/a HENRY ALEXANDER a/k/a HENRY ALEXANDER LEVY, as follows:

A.    Pursuant to 15 U.S.C. § 1116, preliminary and permanent injunctions enjoining Defendants and their respective affiliates, subsidiaries, divisions, officers, agents, employees, representatives, successors, assigns and all those acting for them or on their behalf, or acting in concert with them directly or indirectly from:

1.    manufacturing, selling, offering for sale, distributing, advertising, marketing, promoting, exporting and/or importing of goods bearing the NYYRC Marks or any other marks similar to the NYYRC Marks such that it is likely to cause confusion, mistake, or deception among the trade or public; and/or

2.    doing any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' goods are in any way associated or affiliated with or sponsored, licensed, or endorsed by the NYYRC; and

3.    directing Defendants to segregate, preserve, and produce for inspection all infringing apparel and all documents showing the number of units of infringing apparel sold, offered for sale, distributed, advertised, marketed, promoted, exported and/or imported, all customers who purchased infringing goods, and the individuals involved in the manufacturing, selling, offering for sale, distributing, advertising, marketing, promoting, exporting and/or importing of the infringing goods;

B.      Pursuant to 15 U.S.C. § 1117, grant Plaintiff an equitable accounting of Defendants' profits from their sale of all infringing goods, and award Plaintiff judgment for its damages and/or Defendants' profits arising from Defendants' infringement of an activities with respect to the NYYRC Marks, including pre- and post-judgment interest thereon;

C.      Award Plaintiff Defendants' profits, actual damages, and/or statutory damages under 15 U.S.C. § 1117, whichever is greater, arising from Defendants' violations of Plaintiff's rights, including pre- and post-judgment interest thereon;

D.      Declare that due to the willful nature of Defendants' infringement of Plaintiff's rights, the instant matter is an exceptional case under 15 U.S.C. § 1117, and award Plaintiff treble damages, additional damages, attorneys' fees, and/or costs thereunder;

E.      Award such other relief as the Court deems just and proper.

Dated: December 20, 2024
        New York, NY

                                    Respectfully Submitted,

                                    */s/ Edward Andrew Paltzik*
                                    Edward Andrew Paltzik, Esq.
                                    Bochner PLLC
                                    1040 Avenue of the Americas, 15th Floor
                                    New York, NY 10018
                                    516-526-0341
                                    edward@bochner.law

                                    *Attorneys for Plaintiff*